**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ANNA FRANK, as next friend pursuant to Fed.
R. Civ. P.17(c) for infant plaintiff Michael Frank
Jr.,

                    Plaintiff,

             -against-

SACHEM SCHOOL DISTRICT and
SUFFOLK COUNTY

                 Defendants.
-------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
14-cv-67 (ADS)(ARL)

**APPEARANCES:**

**Civil Rights Clinic, Touro College Jacob D Fuchsberg Law Center**
*Attorneys for the Plaintiff*
225 Eastview Drive
Central Islip, NY 11722
      By: William M. Brooks, Esq., Of Counsel

**Ingerman Smith, L.L.P**
*Attorneys for the Defendant Sachem School District*
150 Motor Parkway, Suite 400
Hauppauge, NY 11788
      By: David Ferdinand Kwee, Esq., Of Counsel

**Suffolk County Attorney's Office**
H. Lee Dennison Building, 5th Floor
100 Veterans Memorial Highway
Hauppauge, NY 11788-4311
      By: Christopher M. Gatto, Esq., Assistant County Attorney

**SPATT, District Judge**.

On January 6, 2014, Anna Frank (the "Plaintiff"), as next friend pursuant to Federal Rule

of Civil Procedure ("Fed. R. Civ. P.") 17(c) for the Infant Plaintiff, Michael Frank, Jr. ("MF"),

commenced this action for compensatory and punitive damages in connection with the decision

of the Defendant Sachem School District ("Sachem") to remove MF from Grundy Elementary

School and place him into the Little Flower Residential Treatment Center, a residential treatment

center for emotionally disturbed children. In particular, the Plaintiff asserts claims against Sachem under (i) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; (ii) Section 504 of the Rehabilitation Act (the "Rehabilitation Act"), 29 U.S.C. § 794(a); (iii) the Civil Right Acts, 42 U.S.C. § 1983, for alleged violations of MF's right to Procedural Due Process under the Fourteenth Amendment of the Constitution; and (iv) the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* In addition, the Plaintiff asserts a claim against the Defendant Suffolk County ("Suffolk County") under the ADA.

Presently before the Court are (i) Sachem's motion to dismiss the Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6); and (ii) Suffolk County's motion to dismiss the Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).

For the reasons set forth below, the Court grants the Defendants' motions in their entirety.

## I. BACKGROUND

Unless otherwise noted, the Court draws the following facts from the Plaintiff's complaint and construes them in the light most favorable to the Plaintiff.

### A. The Parties

MF is currently sixteen years old and a resident of Suffolk County, New York. (Compl. at ¶¶ 1, 16; Kwee Decl., Ex. J.) He was approximately twelve years old on May 16, 2011, when he was transferred to the Little Flower Residential Treatment Center ("Little Flower"). The Plaintiff is MF's natural birth mother and a resident of Suffolk County. (Compl. at ¶ 1.)

As described below, Michael Frank, Sr., MF's father, was involved in a divorce proceeding with the Plaintiff and was awarded temporary custody of MF from January 1, 2009 **to** June 22, 2012. (Id. at ¶¶ 26, 81.) Michael Frank is not a party to this action.

The Defendant Sachem is a school district located in Suffolk County, New York, which had authority to make decisions regarding MF's education.  (Id. at ¶ 1.)

The Defendant Suffolk County is a municipal entity that receives federal financial assistance and was responsible for paying the expenses and costs related to MF's treatment at Little Flower.  (Id. at ¶ 3.)

## B. The Provision of Special Education Services under Federal and New York Law

The IDEA requires states receiving federal funding to provide a "free appropriate public education" to children with disabilities.  20 U.S.C. § 1412(a)(1)(A).  A free appropriate public education consists of special education and related services that are provided in accordance with an individualized education program ("IEP").  20 U.S.C. § 1401(9).  The IEP is a written document that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives."  K.H. v. New York City Dep't of Educ., No. 12-CV-1680 (ARR), 2014 WL 3866430, at *1 (E.D.N.Y. Aug. 6, 2014) (quoting Honig v. Doe, 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)).

The IEP must be developed by a team "including the child's parents, teachers, representatives of the district, and, where appropriate, the child."  Id. (citing 20 U.S.C. § 1414(d)(1)(B)).  In New York, this team is referred to as the Committee on Special Education ("CSE").

The IDEA also established procedural safeguards for the parents of a child with special needs.  20 U.S.C. § 1415.  In particular, the parent has the right to bring a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  Id. at § 1415(f).  If

the school district does not resolve the complaint, the parent has a right to a "due process hearing." Id.

New York Education Law ("NYEL") § 4404 provides for two levels of administrative review. First, a local school district appoints an impartial hearing officer ("IHO") to conduct a Due Process hearing. N.Y. Educ. Law § 4404(1)(a) (McKinney). Second, either party can appeal the IHO's decision to a State Review Officer ("SRO"). N.Y. Educ. Law § 4404(2).

Subject to exhaustion and statute of limitations requirements described in more detail below, the IDEA provides that "[a]ny party aggrieved by the findings and decision made" in the administrative due process proceedings may bring a civil action in federal court "with respect to the complaint presented" in the administrative proceedings. Piazza v. Florida Union Free Sch. Dist., 777 F. Supp. 2d 669, 679 (S.D.N.Y. 2011) (quoting 20 U.S.C. § 1415(i)(2)(A)).

## C. MF's Family and Educational Circumstances

Prior to January 2010, MF attended Hiawartha Elementary School and was an above-average student who did not receive special education services. (Compl. at ¶¶ 16–17.)

In February 2008, MF's parents separated, and thereafter began a highly contested divorce proceeding. (Id. at ¶ 16.) His parents shared custody prior to January 1, 2009. (Id. at ¶¶ 19, 26.)

After MF's parents separated, the Suffolk County Department of Social Services' Child Protective Service investigated and brought charges against each of them for abuse and neglect. (Id. at ¶ 22.) According to the complaint, neither of them were convicted of the charges, though the Plaintiff alleges that Michael Frank resolved one of the charges against him by a negotiated settlement. (Id. at ¶ 23–25.)

4

On January 1, 2009, the Suffolk County Supreme Court awarded temporary custody of MF to his father.  (<u>Id.</u> at ¶ 26.)

The complaint also alleges that when living with his father, MF "openly but passively resisted completing any school work."  (<u>Id.</u> at ¶ 20.)  However, when living with his mother, he "completed all his school work without difficulty . . . and received excellent grades."  (<u>Id.</u> at ¶ 21.)  As a result of his continuing difficulties at school, Sachem requested that MF be evaluated by Dr. Jeffrey Snarr, a psychologist.  (<u>Id.</u> at ¶¶ 20, 29.)

According to the complaint, Dr. Snarr furnished a report to Sachem regarding his evaluation of MF.  (<u>Id.</u> at ¶¶ 30–31.)  In the report, he indicated that MF did not engage in "disruptive, violent, or self-injurious behavior" but was having difficulties at school as a result of his relationship with his father.  (<u>Id.</u> 28, 30.)

On December 10, 2009, the Suffolk County Supreme Court ordered that MF be removed from his father's home temporarily and placed into the Little Flower Residential Treatment Center ("Little Flower") to receive further psychiatric evaluation and in-patient treatment.  (<u>Id.</u> at ¶ 32.)

Little Flower is a residential treatment center and day school located in Suffolk County. (<u>Id.</u> at ¶ 34.)  Patients who live in the residential treatment center receive individual and group therapy.  (<u>Id.</u>)  According to the complaint, Little Flower is a "locked facility from which patients are unable to leave," and "most of the patients . . . also receive psychotropic medications to treat serious mental illness."  (<u>Id.</u>)

In December 2009, Dr. Bernard Hoffman, a psychiatrist at Little Flower, performed a diagnostic exam on MF.  (<u>Id.</u> at ¶¶ 35–36.)  The Plaintiff alleges that Dr. Hoffman concluded that MF had "above average" cognitive and verbal functioning.  (<u>Id.</u> at ¶ 35.)  However, Dr. Hoffman

diagnosed MF with posttraumatic stress disorder ("PTSD") resulting from the domestic dispute regarding his parents. (Id. at 35–36.) However, he determined that MF did not need medication for this condition. (Id.) In addition, Dr. Hoffman recommended that Sachem conduct an investigation into whether Michael Frank abused MF. (Id. at ¶ 36.)

On January 28, 2010, the Suffolk County Supreme Court ordered that MF be discharged from Little Flower, and MF was placed back into his father's care. (Id. at ¶ 37.) In addition, the court ordered that MF transfer from Hiawatha Elementary School to Grundy Elementary School ("Grundy") for the remainder of the 2010 school year. (Id. at ¶ 38.) While at Grundy, MF received special education services. (Id. at ¶ 40.)

## D. MF's 2011 Transfer to Little Flower

In January 2010, following his transfer to Grundy, MF "continued to passively resist completing assignments and participating in classroom activities" in an effort to be removed from his father's care. (Id. at ¶ 46.) According to the complaint, MF was "terrified of his father" who was "physically, emotionally, and verbally abusive to him." (Id. at ¶ 48.)

On March 21, 2011, the Sachem CSE held a meeting to discuss MF's special education needs. (Kwee Decl., Ex. B-9.) At this meeting the CSE classified the Plaintiff as "emotionally disturbed" and recommended that he be placed at Little Flower for the 2011–2012 school year. (Id.) According to the IEP:

> [On March 21, 2011] The CSE convened to discuss an annual review for [the Plaintiff]. Little Flower staff reported that the [Plaintiff's] functioning has been inconsistent. He is currently failing his courses[,] which is highly related to emotion and behavioral difficulties. The CSE recommended continuation at Little Flower for the summer and 2011–2012 school year. Mrs. Frank advocated for his placement at Little Flower. Mr. Frank was in disagreement at this time. Parents have continued court involvement related to custody and divorce proceedings. The CSE may reconvene to address ongoing consideration for [MF's] welfare.

(Id.)

**E. The Plaintiff's Due Process Challenge to the CSE's Decision**

In the months following the March 21, 2011 meeting, the Plaintiff appears to have changed her mind regarding MF's placement at Little Flower because on May 18, 2011, she filed a Due Process complaint against Sachem pursuant to the procedural process set forth in IDEA § 1415 and NYEL § 4404, in which she (i) requested an impartial hearing and a stay of the CSE's decision to place MF at Little Flower; (ii) reimbursement for certain gas expenses in driving MF to school; and (iii) a copy of MF's special education records.  (Kwee Decl., Ex. B-I.)

On May 20, 2011, Mindy Wolman ("Wolman") was appointed as an IHO to review the Plaintiff's Due Process complaint.  (Id. at 1.)

On May 23, 2011, CSE held another meeting to discuss the Plaintiff's objections to the CSE's decision.  (Kwee Decl., Ex. I.)  At the meeting, Michael Frank consented to the CSE's decision to transfer MF to Little Flower, and the Plaintiff voiced her disapproval of MF's transfer to Little Flower.  (Id.; see also Compl. at ¶ 56.)  Despite the Plaintiff's objections, the CSE decided not to alter its decision to transfer MF to Little Flower.  (Id.)  As a result, on May 26, 2011, MF entered the residential treatment center at Little Flower.  (Id. at ¶ 63.)

Dr. Hoffman, the psychiatrist at Little Flower, performed a mental status examination of MF.  (Id. at ¶ 43.)  According to the complaint, Dr. Hoffman's evaluation found "no evidence [that MF had] hallucinations or delusions" or "suicidal or homicidal ideations."  (Id. at ¶ 44.)  In addition, Dr. Hoffman allegedly found that MF did "not present any serious overt behavior[] problems."  (Id. at ¶ 45.)  However, Dr. Hoffman concluded that MF "acted out when he was confronted with the traumatic situation of his parent's divorce."  (Id. at ¶ 44.)

On May 28, 2011, Sachem filed a letter requesting that Wolman dismiss the Plaintiff's Due Process complaint.  (Id.)  In particular, Sachem argued that the Plaintiff lacked standing to

bring a Due Process challenge because Michael Frank, not the Plaintiff, had sole custody of MF at that time. (Id.)

On June 13, 2011, the Plaintiff filed an amended Due Process complaint requesting an impartial hearing and a stay of Sachem's decision to place MF at Little Flower. (Kwee Decl., Ex. B-V.) Michael Frank again did not join in the Plaintiff's amended complaint. (See Compl. at ¶ 53.)

On June 14, 2011, Sachem renewed its motion to dismiss the Plaintiff's Due Process complaint on standing grounds. (Kwee Decl., Ex. B-VI.) In addition, Sachem noted that on June 6, 2011, the Plaintiff and Michael Frank signed a stipulation relating to their divorce proceeding before Judge Andrew A. Crecca in the Suffolk County Supreme Court. (Kwee. Decl., Ex. B-VI-1). According to the stipulation, the parties agreed that "[MF's] father would continue to have temporary custody of [MF]" and that MF would "not be removed from [Little Flower] unless and until it is recommended by Little Flower." (Id.)

On August 11, 2011, Wolman held a hearing to discuss (i) the parties' arguments with respect to standing; and (ii) whether she should appoint a *guardian ad litem* for MF in light of the disagreement between the Plaintiff and Michael Frank as to MF's best interests. (Kwee Decl., Ex. C., Tr. 10:7–12.) At the hearing, MF was represented by Michelle Caldera ("Caldera"). (Id.) The Plaintiff also attended the hearing with Nancy S. Erickson, her advocate. (Id.)

At the hearing, Wolman found that the appointment of a *guardian ad litem* for MF would be appropriate because she found that MF's parents have "very different views as to what is appropriate for him in terms of his educational placement." (Id. at Tr. 48:11–23; 49: 9–15.) However, Wolman concluded that Caldera could not act as MF's *guardian ad litem* because

Caldera had previously represented the Plaintiff. (Id. at Tr. 51:7–12.) Thus, Wolman found that

a new *guardian ad litem* would need to be appointed for MF.

On August 18, 2011, Wolman held a second hearing with respect to Sachem's motion to

dismiss. (Kwee Decl., Ex. D.) Wolman noted that a guardian ad litem had not yet been

appointed for MF. (Id. at Tr. 119:8–12.) However, she concluded that the hearing could proceed

without appointing one because "the district's motion to dismiss is based on standing and is not

the type of substantive issue that the services of a *guardian ad litem* are necessary for." (Id. at

Tr. 119:20–120:14.)

On September 28, 2011, Wolman rendered a decision dismissing the Plaintiff's Due

Process claims relating to MF's transfer to Little Flower and reimbursement of gas expenses.

(Id. at 6.) Wolman found that the Plaintiff did not have standing to make a claim with respect to

either of these issues because it is "undisputed that [MF's] father has had temporary custody of

[MF] at all relevant times here." (Id. at 5.)

However, Wolman denied Sachem's motion with respect to the Plaintiff's claim seeking

access to MF's special education records. (Id.) In addition, she vacated her prior ruling

directing the appointment of a *guardian ad litem* for MF because the only remaining claim — the

Plaintiff's right to access MF's documents — was procedural and did not implicate MF's

substantive rights. (Id. at 6–7.)

The Plaintiff appealed Wolman's decision to the SRO (Kwee Decl., Ex. H.) On

December 9, 2011, the SRO dismissed the Plaintiff's appeal as premature. (Id. at 4.) The New

York State regulation governing appeals to the SRO provides:

> Appeals from an impartial hearing officer's ruling, decision or refusal to decide
> an issue prior to or during a hearing shall not be permitted, with the exception of a
> pendency determination made pursuant to subdivision 4 of section 4404 of the
> Education Law.

N.Y. Comp. Codes R. & Regs. tit. 8, § 279.10. The SRO concluded that the Plaintiff's appeal was premature because the IHO had yet to render a final decision with respect to all of the Plaintiff's claims. (Id.) Thus, the SRO found that under New York regulations the Plaintiff was required to wait to bring her appeal until after the IHO rendered a final decision on her records claim. (Id.)

On December 13, 2011, Wolman held a hearing regarding the Plaintiff's remaining records access claim. (Kwee Decl., Ex. F.) On December 28, 2011, Wolman rendered a written decision ordering that Sachem make MF's entire special education file accessible to the Plaintiff and provide her with copies of certain documents from MF's file. (Kwee Decl., Ex. G., at 6–7.)

The Plaintiff did not renew her appeal to the SRO.

## F. MF's Time at Little Flower

From May 26, 2011 to March 20, 2012, MF lived and attended school at Little Flower. (Compl. at ¶ 63; Kwee Decl., Ex. J.) According to the complaint, during this period, the Defendant Suffolk County, through its Department of Social Services, covered MF's treatment and residential costs. (Compl. at ¶ 71.)

The Plaintiff makes a number allegations regarding MF's treatment at Little Flower, including that: (i) he was not free to leave Little Flower without the permission of Little Flower staff; (ii) the Little Flower staff only permitted him to leave the residential facility for weekend visits with relatives; (iii) he resided solely with children who experienced significant mental disabilities and behavioral issues; (iv) the Little Flower staff imposed a "strict schedule," and he was not free to engage in sports or other activities; (v) the education that he received at Little Flower was worse than the education he received at his prior public schools; and (vi) Little

Flower administered only the "minimum of standardized state tests" and did not administer "final exams." (Id. at ¶¶ 64–67.)

Finally, the Plaintiff alleges MF allegedly "witnessed extreme inappropriate behavior[,] including public masturbation, individuals pulling knives, stabbing people, using needles, doing drugs, and smoking cigarettes." (Id. at ¶ 70.)

## G. MF's Transfer from Little Flower to His Mother's Care

On March 20, 2012, the CSE met for its annual review of MF's special needs. (Kwee Decl., Ex. J.) The CSE updated its IEP for the Plaintiff and concluded that MF "has demonstrated excellent behavior management . . . , excelled in his academics . . . , [and] has established and maintained good relationships with peers and adults." (Id.) As a result, the CSE recommended that MF "return to [Sachem] district for the fall of the 2012–2013 school year in mainstream classes with counseling supports." (Id.)

On June 22, 2012, MF was released from Little Flower to his mother's care pursuant to a temporary custody order by the Suffolk County Supreme Court. (Id. at ¶ 80.) On July 13, 2012, the Plaintiff and Michael Frank settled their divorce proceedings, and the Plaintiff was awarded sole custody of MF. (Id. at ¶ 81.)

On September 4, 2012, MF began attending the Seneca Middle School ("Seneca"), a public school within the Sachem School District, and received no special educations services. (Id. at ¶ 83.) While at Seneca, students made disparaging remarks toward MF regarding his placement at Little Flower. (Id. at ¶ 87.) For example, they allegedly called MF "mental" and told him that he should "go kill himself." (Id.)

As a result of this persistent bullying, in April 2013, the Plaintiff and MF moved away from the Sachem School District. (Id. at ¶ 89.) According to the complaint, MF currently

attends an unspecified school where he is "well-integrated," "successful," and does not receive special education services. (Id.)

## H. The Present Motions

As stated above, on January 6, 2014, the Plaintiff commenced the present action and asserted four claims against Sachem for the violation of: (i) the ADA § 12132 for failing to place MF in a setting that is integrated to the greatest extent possible with non-disabled members of the community; (ii) the Rehabilitation Act § 504 for excluding MF from the benefits of a public education based on "stereotypical views of individuals with mental illness"; (iii) the procedural Due Process clause of the Fourteenth Amendment of the United States Constitution for failing to provide MF with notice and an opportunity to be heard with respect to Sachem's decision to place him at Little Flower for the 2011–2012 school year; and (iv) the ADA § 12132 and the IDEA § 1400, *et seq.*, for participating in a funding scheme that provides economic incentives to school districts to segregate students with disabilities from the community. (Id. at ¶¶ 90–97.)

Further, the Plaintiff asserts a claim against Suffolk County under ADA § 12132 for allegedly paying the costs associated with MF's placement at Little Flower. (Id. at ¶ 98.)

Sachem moves to dismiss the Plaintiff's claims because (i) the claims are time-barred; (ii) the Plaintiff failed to exhaust his administrative remedies; and (iii) her claims fail as a matter of law. (Sachem's Mem. of Law at 11–25.) Suffolk County moves separately to dismiss the Plaintiff's ADA claims against it. (Suffolk's Mem. of Law at 1–9.)

In response to Sachem's motion, the Plaintiff withdrew her second cause of action against Sachem under the Rehabilitation Act § 504. (The Pl's Mem. of Law in Opp'n to Sachem's Mot. 10–11.) Accordingly, the Defendants' motions are granted as to those claims. See, e.g., Massaro v. Allingtown Fire Dist., No. 3:03-CV-00136 (EBB), 2006 WL 1668008, at *7 (D. Conn. June

16, 2006) ("In his Complaint, [the] [p]laintiff claims that [the] [d]efendants violated his right to due process guaranteed by the United States and Connecticut constitutions. In his Opposition Memorandum, he withdraws those due process claims as he 'did not intend to pursue those at trial.'. . . . Accordingly, [the] [p]laintiff's due process claims are dismissed and [the] [d]efendants' Motion to Dismiss as to those claims is therefore granted.").

Thus, the Court will consider the parties' arguments with respect to the Plaintiff's remaining claims. (Id. at ¶¶ 90–97.)

## II. DISCUSSION

## A. Legal Standards

### 1. Rule 12(b)(1)

A court can dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." Lewis v. Carrano, 844 F. Supp. 2d 325, 328 (E.D.N.Y. 2012) (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). "'A Plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" Bethune v. Maria, No. 10 CIV. 9070 (PAE), 2012 WL 896185, at *3 (S.D.N.Y. Mar. 16, 2012) (quoting Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008)).

In addition, where, as here, the case is at the pleading stage and no evidentiary hearings have been held, the court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in favor of the Plaintiff. Buday v. New York Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) ("Where, as here, the case is at the pleading stage and no evidentiary hearings have been held, however, in reviewing the grant of a motion to dismiss under Rule 12(b)(1) we must accept as true all material facts alleged in the complaint and draw

all reasonable inferences in the plaintiff's favor.") (citing <u>Conyers v. Rossides</u>, 558 F.3d 137, 143 (2d Cir. 2009)). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." <u>Id.</u> (quoting <u>Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.</u>, 968 F.2d 196, 198 (2d Cir. 1992)).

Finally, a district court may consider evidence outside of the pleadings in deciding a Rule 12(b)(1) motion. <u>Id.</u> (citing <u>Morrison v. Nat'l Australia Bank Ltd.</u>, 547 F.3d 167, 170 (2d Cir. 2008); <u>see also</u> <u>Sadikoglu v. United Nations Dev. Programme</u>, No. 11 CIV. 0294 (PKC), 2011 WL 4953994, at *2 (S.D.N.Y. Oct. 14, 2011) ("'[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'") (quoting <u>Aurecchione v. Schoolman Transp. Sys.</u>, Inc., 426 F.3d 635, 638 (2d Cir. 2005)).

### 2. Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss, the court "'must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.'" <u>Luna v. N. Babylon Teacher's Org.</u>, 11 F. Supp.3d 396, 400–401 (E.D.N.Y. 2014) (Spatt, J.) (quoting <u>Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.</u>, 517 F.3d 104, 115 (2d Cir. 2008)).

In addition, a plaintiff opposing a Rule 12(b)(6) motion must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). In particular, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." <u>Id.</u>; <u>see also</u>

Luna, 11 F. Supp.3d at 400–401 ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (citing Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006)).

The Court notes that Sachem attached to its present motion records of the administrative proceedings related to the Plaintiff's request to stay MF's placement at Little Flower, including: (i) the record of exhibits that she submitted to the SRO; (ii) the transcripts of the hearings before Wolman held on August 11, 2011, August 18, 2011, and December 13, 2011; (iii) the September 28, 2011 and December 28, 2011 decisions rendered by Wolman; and (iv) the December 9, 2011 decision rendered by the SRO related to the Plaintiff's appeal of Wolman's decision. (Kwee Decl., Exs. B–H.)

When considering a Rule 12(b)(6) motion, a court can generally "only consider the complaint, any written instrument attached to the complaint as exhibits, or any documents incorporated in the complaint by reference." Garnett-Bishop v. New York Cmty. Bancorp, Inc., No. 12-CV-2285 (ADS), 2014 WL 5822628, at *13 (E.D.N.Y. Nov. 6, 2014) (Spatt, J) (citing Rothman v. Gregor, 220 F.3d 81, 88–89 (2d Cir. 2000)); see also Ahluwalia v. St. George's Univ., LLC, No. 14-CV-3312 ADS), 2014 WL 6674615, at *8 (E.D.N.Y. Nov. 25, 2014) (Spatt, J) ("Furthermore, in deciding a motion to dismiss, the Court is confined to 'the allegations contained within the four corners of [the] complaint.' . . . . This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken.") (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998)).

However, the Court is permitted to "take judicial notice of documents in the public record, which includes records and reports of administrative bodies." Vale v. Great Neck Water Pollution Control Dist., No. 14-CV-4229 (ADS), 2015 WL 248603, at *4 (E.D.N.Y. Jan. 20, 2015) (Spatt, J) (quoting Volpe v. Nassau County, 915 F.Supp.2d 284, 291 (E.D.N.Y. 2013)).

Thus, the Court will consider as a matter of judicial notice the administrative records of the Plaintiff's Due Process challenge to the MF's placement at Little Flower. See, e.g., Piazza v. Florida Union Free Sch. Dist., 777 F. Supp. 2d 669, 678 (S.D.N.Y. 2011) ("Although the [c]omplaint does not mention the SRO Decision, the [c]ourt may consider it as a matter of judicial notice."); Morris v. David Lerner Associates, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010) ("Moreover, with respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the [c]ourt may consider such documents because they are public documents filed in state administrative proceedings, as well as because they are integral to [the] plaintiff's claims."); Combier v. Biegelson, No. 03 CV 10304 (GBD), 2005 WL 477628, at *1 (S.D.N.Y. Feb. 28, 2005) ("In light of plaintiff's pleadings, review of the impartial hearing transcript, the decision of the Impartial Hearing Officer ("IHO"), and the decision of the State Review Officer ("SRO") is also appropriate.").

Sachem also attaches as exhibits MF's 2011 and 2012 IEP's and an August 16, 2012 form signed by the Plaintiff revoking her consent to terminate special education services for the Plaintiff. (Kwee Decl., Exs. I, J.) Although the Plaintiff did not attach these documents to her complaint, her claims arise from the CSE's decision to classify MF as emotionally disturbed and place him at Little Flower. (See Compl. at ¶¶ 51, 78–79.) Accordingly, the Court may consider these exhibits without converting the present motions to dismiss into motions for summary judgment. See, e.g., Piazza v. Florida Union Free Sch. Dist., 777 F. Supp. 2d 669, 678

(S.D.N.Y. 2011) ("The IEPs are 'integral' to the [c]omplaint because the [c]omplaint asserts that the District 'failed to implement Nicholas's IEP,' . . . ; the [c]omplaint therefore necessarily 'relies heavily upon [the IEPs'] terms and effect.'") (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)); see also Combier-Kapel v. Biegelson, 242 F. App'x 714, 715 (2d Cir. 2007) ("The district court did not err in considering the IHO's decision, along with certain other documents in the administrative record, since such documents were subject to judicial notice and were integral to the complaint.").

## B. As to the Plaintiff's First Cause of Action

In her first cause of action, the Plaintiff alleges that Sachem violated the "integration mandate" of Title II of the ADA, 42 U.S.C. § 12132 (the "integration mandate"), by failing to place MF in an integrated setting to the greatest extent possible. (Compl. at ¶ 91.)

Sachem argues that the Plaintiff's claim should be dismissed because (i) it is time-barred; (ii) the Plaintiff failed to exhaust her administrative remedies; and (iii) the Plaintiff does not sufficiently allege that Sachem violated the integration mandate. (Sachem's Mem. of Law at 11–19.)

The Court finds that the Plaintiff has failed to (1) state a claim under the integration mandate and (2) properly exhaust her administrative remedies. Therefore, the Court does not reach Sachem's argument that the Plaintiff's claims are time-barred.

### 1. As to the Plausability of the Plaintiff's ADA Claim

To establish a violation of Title II of the ADA, a plaintiff must prove that "(1) he or she is a "qualified individual" with a disability; (2) that the defendants are subject to the ADA; and (3) that he or she was denied the opportunity to participate in or benefit from the defendants' services, programs, or activities, or was discriminated against by defendants, by reason of his or

her disability." Disability Advocates, Inc. v. Paterson, 653 F. Supp. 2d 184, 190 (E.D.N.Y. 2009); see also Bolmer v. Oliveira, 594 F.3d 134, 148 (2d Cir. 2010) ("To establish a violation of Title II, [the plaintiff] must show that (1) he is a 'qualified individual with a disability,' (2) [the defendant] is subject to the ADA, and (3) he was, 'by reason of such disability, . . . excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity, or . . . subjected to discrimination by any such entity.'") (quoting 42 U.S.C. § 12132).

With respect to the third prong, one way for a plaintiff show discrimination is through a violation of the integration mandate. The integration mandate "requires that when a state provides services to individuals with disabilities, it must do so 'in the most integrated setting appropriate to their needs.'" Disability Advocates, Inc., 653 F. Supp. 2d at 190 (quoting 28 C.F.R. § 35.130(d)); see also Disability Advocates, Inc. v. New York Coal. for Quality Assisted Living, Inc., 675 F.3d 149, 154 (2d Cir. 2012) ("Title II of the ADA, 42 U.S.C. § 12132 . . . requires the provision of mental health services 'in the most integrated setting appropriate to the needs of qualified individuals with disabilities.'") (citation omitted).

In explaining the scope of the integration mandate, the Supreme Court in Olmstead v. L.C., 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999) held that "[u]njustified isolation . . . is properly regarded as discrimination based on disability." Id. at 597. There, the Supreme Court affirmed the Eleventh Circuit's holding that the institutionalization of two mentally ill plaintiffs could constitute a violation of the integration mandate because their doctors had found that they could handle treatment outside of an institution in a community-based setting. Id.

However, a plurality of the Court disagreed with the Court of Appeals' interpretation of the "reasonable modification" regulation, which permits States to resist requests by patients for modification of prescribed mental health services when it would entail a "fundamental

alteration" of the State's services and programs.  Id. at 602 (quoting 28 CFR § 35.130(b)(7) (1998)).  In particular, the plurality found that the "fundamental alteration" regulation permitted a State to be excused from providing services to a plaintiff in a community setting, as opposed to an institution, when it could "show that, in the allocation of available resources, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large and diverse population of persons with mental disabilities."  Id. at 604.

Following Olmstead, courts in this Circuit have permitted mentally ill patients in a small number of cases to assert claims under the integration mandate for injunctive relief requiring municipal entities to provide them with greater access to care in community settings.  See, e.g., Disability Advocates, Inc. v. Paterson, 653 F. Supp. 2d 184, 312 (E.D.N.Y. 2009) (granting the request of mentally ill plaintiffs residing in adult homes for a permanent injunction requiring New York State mental health organizations to develop a plan to expand "supported housing."); Mental Disability Law Clinic v. Hogan, No. CV066320 (CPS)(JO), 2008 WL 4104460, at *14 (E.D.N.Y. Aug. 28, 2008) (denying motion to dismiss class action complaint on behalf of individuals subject to civil commitment seeking an injunction requiring mental health officials to conduct evaluations prior to committing individuals as to whether the patients would be eligible for assisted outpatient mental health treatment instead of being place in an institution).

By contrast, in the present action, the Plaintiff is not an individual who is currently residing in an institution or at risk of institutionalization and is seeking greater access to a community-based setting, as was the case in Olmstead and in subsequent cases.  Rather, the Plaintiff is seeking compensatory and punitive damages for the CSE's decision to classify MF as emotionally disturbed and place him into a residential treatment center for the 2011–2012 school

years.  (See Compl. at ¶¶ 91, 99.)  Neither the Plaintiff, nor the Court, has identified any legal authority that supports expanding Olmstead to include such claims.

Moreover, even if the Plaintiff could seek monetary damages under the integration mandate, the Plaintiff has failed to allege facts that would support such a claim.  First, courts in this Circuit have found that punitive damages are not available under the ADA in claims against municipalities, and therefore the Plaintiff's claim for punitive damages must be dismissed. Palmieri v. City of Hartford, 947 F. Supp. 2d 187, 207 (D. Conn. 2013) ("Courts have found that punitive damages against municipalities are unavailable under the ADA.") (collecting cases); Infantolino v. Joint Indus. Bd. of Elec. Indus., 582 F. Supp. 2d 351, 362 (E.D.N.Y. 2008) ("[C]ompensatory and punitive damages are not available for claims brought pursuant to the anti-retaliation provisions of the ADA[.]").

Second, it is well settled that monetary damages are only available under Title II of the ADA where the Plaintiff is able to demonstrate intentional discrimination.  Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009) ("'The law is well settled that intentional violations of Title VI, and thus the ADA and the Rehabilitation Act, can call for an award of money damages.'") (quoting Bartlett v. N.Y. State Bd. of Law Exam'rs, 156 F.3d 321, 331 (2d Cir.1998), vacated on other grounds and remanded, 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999)); Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 111 (2d Cir. 2001) ("The question, therefore, is how Title II monetary claims against the states can be limited so as to comport with Congress's § 5 authority. The answer, we believe, is to require plaintiffs bringing such suits to establish that the Title II violation was motivated by discriminatory animus or ill will based on the plaintiff's disability.").  To prove "intentional discrimination" under the ADA, a plaintiff must allege facts showing that a policymaker acted with ill will or personal

animosity toward him because of his disability or that the policymaker acted with "deliberate indifference" to his rights under the ADA. <u>Gershanow v. Cnty. of Rockland</u>, No. 11-CV-8174 (CS), 2014 WL 1099821, at *4 (S.D.N.Y. Mar. 20, 2014) ("To prevail on a claim for money damages under Title II, a plaintiff must prove a policymaker's 'deliberate indifference to the rights secured the disabled by those statutes,' in addition to the other elements of a Title II claim . . . . Deliberate indifference does not require personal animosity or ill will.") (citations omitted); <u>see also</u> <u>Loeffler</u>, 582 F.3d at 275 ("'[I]ntentional discrimination may be inferred when a 'policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the [challenged] policy . . . [or] custom[.]''") (quoting <u>Bartlett</u>, 156 F.3d at 331).

A plaintiff can "demonstrate[] deliberate indifference in the Title II context where an 'official with authority to address the alleged discrimination and to institute corrective measures on [the] [p]laintiff's behalf had actual knowledge of ongoing discrimination against [the] [p]laintiff but failed to respond adequately[.]'" <u>Gershanow</u>, 2014 WL 1099821, at *4 (quoting <u>Stamm v. N.Y.C. Transit Auth.</u>, No. 04–CV–2163 (SLT), 2013 WL 244793, at * 4 (E.D.N.Y. Jan. 22, 2013)).

In the instant case, Sachem requested that Dr. Hoffman perform a psychological evaluation on MF in 2009 and 2011. (Compl. at ¶¶ 35–36, 44.) The complaint alleges that Dr. Hoffman concluded that although MF did not have "serious overt behavior problems," he suffered from PTSD and "acted out when confronted with the traumatic situation of his parent's divorce." (<u>Id.</u> at ¶ 35, 44.) Further, the CSE held two meetings to discuss MF's IEP during which the psychological staff at Little Flower who had been working with him concluded that his

"functioning has been inconsistent" and that he "is currently failing his courses[,] which is highly related to emotional and behavioral difficulties."  (Id.)

These allegations indicate that Sachem acted with caution and in conformity with the procedural requirements of the IDEA before placing the Plaintiff at Little Flower.  Even construing her allegations as true, Sachem's actions are a far cry from the conduct that could plausibly suggest a deliberate indifference to the Plaintiff's rights under the ADA.  See, e.g., MC v. Arlington Cent. Sch. Dist., No. 11-CV-1835 (CS), 2012 WL 3020087, at *11 (S.D.N.Y. July 24, 2012) ("It is simply not plausible that a school that (apparently successfully) implemented an IEP for a student with Asperger's could be said to be indifferent to the student's condition, even if one teacher made one unkind remark on one day.  Nor is there any basis on which one could infer any sort of discriminatory intent or gross negligence from Gironda's attempt to get CC to join the Allies Group.").  The fact that the Plaintiff disagreed with the CSE's decision does not by itself give rise to an inference of discrimination under the ADA.  Rather, as described below, any dispute with the CSE's decision should have been made through the procedures afforded the Plaintiff under the IDEA.

Accordingly, the Court finds that the Plaintiff has failed to state a claim under the integration mandate.

**2. As to the IDEA's Exhaustion Requirements**

Even if the Plaintiff's integration mandate claim is cognizable, the Court finds that the Plaintiff failed to properly exhaust her administrative remedies.

As stated previously, under the IDEA, parents of students "with disabling conditions are guaranteed 'both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate.'" Cave v. E.

Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008) (citing Honig v. Doe, 484 U.S. 305, 311–12, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)).  In particular, a parent is entitled to request a Due Process hearing if the parents have complaints with respect to any matter regarding their child's "identification, evaluation, or educational placement" as described in the child's IEP.  Id. (quoting 20 U.S.C. § 1415(b)(6)(A)).

New York has implemented a two tiered system for review of a parent's complaint with respect to an IEP: first, an IHO appointed by the local school board conducts a hearing and issues a written decision regarding a parent's complaint; second, either party can appeal the decision to an SRO at the New York Education Department.  Id. (citing Heldman on Behalf of T.H. v. Sobol, 962 F.2d 148, 152 (2d Cir. 1992)); see also N.Y. Educ. Law § 4404.

An aggrieved party has the right to file a suit in a federal or state court appealing an SRO's decision only after exhausting these procedures.  Licata v. Salmon, No. 14-CV-2637 (SJF), 2015 WL 153843, at *5 (E.D.N.Y. Jan. 12, 2015) (citing Cave, 514 F.3d at 245); see also Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 204-05 (2d Cir. 2007) ("It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court") (internal quotation marks, citations, and alterations omitted).

If the party fails to exhaust the IDEA's administrative remedies before commencing its action, the court must dismiss the case for lack of subject matter jurisdiction.  Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 496 F. App'x 131, 133 (2d Cir. 2012) ("Failure to exhaust the [IDEA's] administrative remedies deprives the court of subject matter jurisdiction.") (citing Cave, 514 F.3d at 245); see also Polera v. Bd. of Educ. of Newburgh

Enlarged City Sch. Dist., 288 F.3d 478, 483 (2d Cir. 2002) ("A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction.")

Significantly, these exhaustion requirements apply to any claims for relief "available under the IDEA, regardless of the statutory basis of their complaint." Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 246 (2d Cir. 2008); see also 20 U.S.C. § 1415(l) ("[B]efore the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.) (emphasis added).

Thus, a claim under a different statute, such as the ADA, may still be subject to the exhaustion requirements of the IDEA to the extent that the ADA claim seeks relief that is "available" under the IDEA. See Stropkay v. Garden City Union Free Sch. Dist., No. 14-0103-CV, 2014 WL 6778397, at *1 (2d Cir. Dec. 3, 2014) ("Where, as here, plaintiffs raise 'grievances related to the education of disabled children,' they are obligated to 'exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act).'") (quoting Polera v. Bd. of Educ. of Newburgh, 288 F.3d 478, 488–49 (2d Cir. 2002)).

However, the IDEA's exhaustion requirements do not apply in situations where the exhaustion would be "futile." Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 205 (2d Cir. 2007) (quoting Polera v. Bd. of Educ. of Newburgh, 288 F.3d 478, 488 (2d Cir. 2002)). The party seeking to avoid exhaustion bears the burden of showing futility. Cave, 514 F.3d at 249 (citing Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 488, n. 8 (2d. Cir. 2002)).

In the instant case, Sachem alleges that the Plaintiff failed to exhaust her administrative remedies under the IDEA because she did not properly appeal the IHO's decision dismissing her challenge to the CSE to the SRO. (The Def. Sachem's Mem. of Law at 13–19).

The Plaintiff does not dispute that she failed to exhaust her administrative remedies under the IDEA. However, she asserts that the exhaustion requirements of the IDEA do not apply to her ADA claim because (a) she seeks compensatory and punitive damages, which are not available under the IDEA; and (b) her resort to the administrative process under the IDEA would have been futile. (The Pl.'s Opp'n Mem. of Law to Sachem's Mot. at 5–7.)

### a. As to the Whether the Relief Sought is Available under the IDEA

As stated above, under IDEA § 1415, a plaintiff is required to exhaust not only her IDEA claims, but also any other claims for relief that are also "available under the IDEA, regardless of the statutory basis of their complaint." 20 U.S.C. § 1415.

The Second Circuit has interpreted this language broadly and made clear that a "prayer for damages does not enable a plaintiff to 'sidestep the exhaustion requirement of the IDEA.'" Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 246 (2d Cir. 2008) (quoting Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 488 (2d Cir. 2002)); see also Stropkay v. Garden City Union Free Sch. Dist., No. 14-0103-CV, 2014 WL 6778397, at *1 (2d Cir. Dec. 3, 2014) ("We construe this statutory language broadly, such that [the] plaintiffs' request for damages, a form of relief not available under the IDEA, does not enable them to bypass the IDEA's administrative exhaustion rule.") (internal quotations marks and citations omitted).

Where, as here, a plaintiff's claim relates to the placement or classification of his or her child, courts have applied the exhaustion requirements under the IDEA even when the claims

seeks compensatory relief not available under the IDEA.  See, e.g., M.A. v. New York Dep't of Educ., No. 10 CIV. 3646 (DAB), 2014 WL 775091, at *4 (S.D.N.Y. Feb. 25, 2014) ("Plaintiffs challenge the content of W.A.'s educational program and whether the program was the least restrictive environment; these claims thereby fall squarely within the IDEA and require exhaustion."); Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 820 F. Supp. 2d 490, 505 (S.D.N.Y. 2011) (applying exhaustion requirements of the IDEA to a plaintiffs' ADA claims because their claims "all relate to the identification, evaluation, or educational placement of Daniel, or his treatment by his teacher because of his disability, and therefore these claims all invoke Daniel's right to a free appropriate public education."), aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 496 F. App'x 131 (2d Cir. 2012).

Here, the gravamen of the Plaintiff's ADA claim is that the CSE's decision to place the Plaintiff in Little Flower was improper because Little Flower was not the "integrated to the greatest extent possible."  (Compl. at ¶ 91.)  A claim, such as the Plaintiff's ADA claim, which relates to a child's placement falls squarely within the ambit of the Due Process hearings afforded by the IDEA§ 1415(b)(6)(A) and NYEL § 4404.  See Cave, 514 F.3d at 245 ("Parents are specifically entitled to request a due process hearing in order to present complaints as 'to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.'") (quoting 20 U.S.C. § 1415(b)(6)(A)); Baldessarre, 820 F. Supp. 2d at 507 (S.D.N.Y. 2011) ("However, to the extent that [the] [p]laintiffs believed the proposed classification and placement of Daniel were discriminatory, . . . [the] [p]laintiffs could have sought relief through the IDEA administrative process by seeking an impartial hearing[.]")

Indeed, the Plaintiff's May 18, 2011 motion for an impartial hearing to stay the CSE's decision to place MF at Little Flower was made in terms nearly identical to her present ADA claim: "I disagree with the decision in May of 2010 to classify my son . . . as, 'emotionally disturbed' and put him in a special school for emotionally disturbed children . . . . Even if [MF] was emotionally disturbed, which he is not, he could still be sent to his regular school, with appropriate Services.  His regular school is the least restrictive environment."  (Kwee Decl, Ex. B-I.)

Thus, the Court finds that "it is abundantly clear that, even though [the] [p]laintiffs are [now] seeking monetary damages, they are alleging a deprivation of educational services that is within the province of the IDEA."  Gardner v. Uniondale Pub. Sch. Dist., No. 08-CV-847 (JFB)(AKT), 2008 WL 4682442, at *8 (E.D.N.Y. Oct. 21, 2008).  As such, the Plaintiff's ADA claim is not excused from the exhaustion requirements of the IDEA, and, as stated above, the Plaintiff concedes that she did not satisfy the IDEA exhaustion requirement because she did not properly appeal the IHO's final decision to the SRO prior to commencing the present action.

### b. Futility

As discussed above, the "IDEA exhaustion requirement[s] [are] excused when exhaustion would be futile because the administrative procedures do not provide [the plaintiff with] an adequate remedy."  Cave, 514 F.3d at 249 (citing Honig v. Doe, 484 U.S. 305, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988)).

The Second Circuit has explained the rationale for the futility exception to the IDEA exhaustion doctrine as follows:

> The exhaustion doctrine prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes. See McKart v. United States, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969); Riley, 668 F.2d at 640; see

also Kenneth C. Davis, Administrative Law Treatise ch. 26 (1983). The policies underlying the exhaustion requirement do not come into play, however, when pursuit of administrative remedies would be futile because the agency either was acting in violation of the law or was unable to remedy the alleged injury.

Heldman on Behalf of T.H. v. Sobol, 962 F.2d 148, 159 (2d Cir. 1992); see also Licata v. Salmon, No. 14-CV-2637 (SJF), 2015 WL 153843, at *7 (E.D.N.Y. Jan. 12, 2015) ("The exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy . . . . To show futility, a plaintiff must demonstrate that 'adequate remedies are not reasonably available' or that 'the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process.") (internal quotation marks and citations omitted).

Based on these principles, the Second Circuit has accepted futility arguments where: (i) "the state agency was itself acting contrary to law"; (ii) "the case involves systemic violations that could not be remedied by local or state administrative agencies"; (iii) "an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical health)"; or (iv) "the complaint alleges that the defendant school district 'had failed to implement the clearly-stated requirements of the IEPs." Licata v. Salmon, 2015 WL 153843, at *7 (citing Baldessarre, 496 F. App'x at 134); see also Stropkay v. Garden City Union Free Sch. Dist., ⸻ F. App'x ⸻, 2014 WL 6778397, at * 2 (2d Cir. Dec.3, 2014)).

The Plaintiff claims that her claims could not be remedied by the Due Process hearings provided by the IDEA § 1415 and NYEL § 4404 because the IHO found that she did not have standing to challenge the CSE decision to place MF at Little Flower.   (The Pl.'s Mem. of Law in Opp'n to Sachem's Mot. at 7.)

In so arguing, the Plaintiff relies on Heldman on Behalf of T.H. v. Sobol, 962 F.2d 148, 159 (2d Cir. 1992).  There, the Second Circuit declined to apply the IDEA exhaustion requirements to a plaintiff's claim challenging the New York procedures for the selection of hearing officers under the IDEA.  Id. at 158.  The Court reasoned that it would have been futile for the plaintiff to pursue administrative remedies for his claims because "the Commissioner nor the assigned hearing officer has the authority to alter the procedure."  Id. at 159.  The court further reasoned, "[t]o require a systemic challenge, such as [the plaintiff's], to pursue administrative remedies would not further the purposes of IDEA and would only serve to insulate the state procedures from review[.]"  Id.

By contrast, here, the IHO and SRO had authority to resolve the Plaintiff's challenge to the CSE's decision.  Indeed, the IHO held three hearings where the Plaintiff testified and made legal arguments with regard to Sachem's motions to dismiss her claim. Cf. Heldman, 962 F.2d at 159 ("[The plaintiff] claims that the NYSED regulation specifying the hearing officer selection procedure violates the mandate of IDEA.  Because the regulation implements a New York statute, neither the Commissioner nor the assigned hearing officer has the authority to alter the procedure; therefore, it would be an exercise in futility to require [the plaintiff] to exhaust the state administrative remedies.").

Rather, her claim challenges the merits of the IHO's decision to dismiss her Due Process claim.  In such circumstances, courts in this Circuit have refused to apply the futility exception because the plaintiffs' claims could be properly addressed by procedures afforded under the IDEA.  See, e.g., Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008) (concluding that the futility exception did not apply because "there is no allegation of a system-wide violation of the IDEA's mandates or of a district-wide policy of discrimination against

hearing-impaired students. Nor do appellants make a plausible argument that the administrative

process is so structurally tainted that they would not have been afforded a fair and impartial

forum to present their claims."); Camac v. Long Beach City Sch. Dist., No. 09 CV 5309 (DRH),

2011 WL 3030345, at *13 (E.D.N.Y. July 22, 2011) ("Courts within this Circuit have been

careful to distinguish between claims regarding 'inadequate educational programs and facilities,

which constitute systemic violations to be addressed by the federal courts, from technical

questions of how to define and treat individual students' learning disabilities, which are best

addressed by administrators.'") (quoting Scaggs v. N.Y. State Dep't of Educ., 2007 WL

1456221, at *3 (E.D.N.Y. May 16, 2007)); Baldessarre, 820 F. Supp. 2d 490, 508 (S.D.N.Y.

2011) (declining to apply futility exception where "[the] [p]laintiffs have not alleged that the

local or state education agency 'has adopted a policy or pursued a practice of general

applicability that is contrary to law,' . . . instead, they are specifically alleging that Defendants'

actions discriminated against and interfered specifically with Daniel's education alone[.]").

    The Plaintiff challenges the IHO's individual decision with respect to her son. She does

not make allegations of system-wide discrimination, so that the Plaintiff's first cause of action

under Article II of the ADA is not exempted from the IDEA's exhaustion requirements under the

futility exception. As such, the Court finds that it lacks subject matter jurisdiction to resolve the

Plaintiff's first cause of action and grants Sachem's motion to dismiss with respect to that claim.

See Gardner, 2008 WL 4682442 at *17 ("In sum, [the] plaintiffs' claims under the IDEA and the

Rehabilitation Act are not exempted from the exhaustion requirement of the IDEA under the

futility exception, and this [c]ourt may not exercise subject matter jurisdiction over them.").

    As stated above, the Plaintiff withdrew her second cause of action. As such, the Court

will next consider the Plaintiff's third cause of action.

**C. As to Plaintiff's Third Cause of Action**

To state a claim under § 1983, "a plaintiff must allege: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law." Leder v. Am. Traffic Solutions, Inc., No. 14-CV-103 (ADS), 2015 WL 332136, at *8 (E.D.N.Y. Jan. 24, 2015) (citing Ahmed v. Town of Oyster Bay, 7 F.Supp. 245, 255 (E.D.N.Y. 2014)); see also 42 U.S.C. § 1983.

However, a municipality or a municipal entity cannot be held liable under § 1983 on a *respondeat superior theory*. Dzugas-Smith v. Southold Union Free Sch. Dist., No. CV-08-1319 (SJF), 2012 WL 1655540, at *20 (E.D.N.Y. May 9, 2012) ("A municipality or municipal entity cannot be held liable under Section 1983 on a *respondeat superior* theory."); see also Connick v. Thompson, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) ("A municipality or other local government . . . . are not vicariously liable under § 1983 for their employees' actions.). Rather, the Plaintiffs who seek to impose liability on local governments under § 1983 "must show that 'action pursuant to official municipal policy' caused their injury." Connick, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (quoting Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); see also Cash v. Cnty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) ("In short, to establish municipal liability under § 1983, a plaintiff must prove that action pursuant to official municipal policy caused the alleged constitutional injury.") (internal quotation marks and citations omitted).

Official municipal policy includes (i) "the decisions of a government's lawmakers"; (ii) "the acts of its policymaking officials"; and (iii) "practices so persistent and widespread as to practically have the force of law." Connick, 131 S. Ct. at 1359, 179 L. Ed. 2d 417; see also Hurdle v. Bd. of Educ. of City of New York, 113 F. App'x 423, 424-25 (2d Cir. 2004) ("A

school district's liability under Monell may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'") (quoting Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004)).

In addition, "where a policymaking official exhibits deliberate indifference to constitutional [or statutory] deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a [municipal] policy or custom that is actionable under § 1983." Dzugas-Smith. 2012 WL 1655540 at *21 (quoting Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004)); see also Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995) ("To prove such deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious . . . . An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents.")

The "deliberate indifference standard" is strict: "[t]he operative inquiry is whether those facts demonstrate that the policymaker's inaction was the result of 'conscious choice' and not 'mere negligence.'" Cash, 654 F.3d at 334 (quoting Amnesty Am., 361 F.3d at 126); see also Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) ("Specifically, Monell's policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions."); see also Walker v. City of New York, 974 F.2d

293, 297 (2d Cir. 1992) ("Such a deliberate choice could be shown where 'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'") (citation omitted).

Significantly, school districts, such as Sachem, are considered to be local governments and are subject to the same standards of liability as local governments under Monell. Dzugas-Smith, 2012 WL 1655540 at *20 (quoting Kantrowitz v. Uniondale Union Free Sch. Dist., 822 F. Supp. 2d 196, 216 (E.D.N.Y. 2011)); see also Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 128 (2d Cir. 2004) ("Municipalities and other local government bodies, including school districts, are considered 'persons' within the meaning of § 1983.").

Here, the Plaintiff alleges that MF's rights to procedural Due Process were violated by the absence of a policy or regulation designed to permit a student, such as MF, "to initiate an administrative or other review of a decision to confine him to residential center, even where the conflict between his interests and his parent's interests is apparent." (The Pl.'s Mem. of Law at 10.)

"There are three elements to a procedural due process claim: "(1) that the plaintiff possessed a constitutionally protected interest, (2) that such interest was deprived as a result of government action, (3) and that the deprivation occurred without constitutionally adequate pre-or post-deprivation process." Toth ex rel. Toth v. Bd. of Educ., Queens Dist. 25, No. 07-CV-3239 SLT (JO), 2008 WL 4527833, at *4 (E.D.N.Y. Sept. 30, 2008) (citing Does v. Mills, No. 04 Civ. 2919 (RWS), 2005 WL 900620, at *8 (S.D.N.Y. April 18, 2005)); see also Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist., No. 07 CIV. 8828 ER, 2013 WL 3929630, at *9 (S.D.N.Y. July

30, 2013) ("'When protected liberty interests like public education,' are at issue, 'the government may deprive one of that interest so long as the process afforded provides minimal constitutional procedural protections.'") (quoting <u>A.M. ex rel. J.M. v. N.Y.C. Dep't of Educ.</u>, 840 F.Supp.2d 660, 689 (E.D.N.Y. 2012)).

Even assuming that the Plaintiff has adequately demonstrated the first two elements, the Plaintiff fails to plausibly allege that New York State regulations do not provide a student with sufficient pre-or post-deprivation process.  With respect to appointing a *guardian ad litem* to represent students at impartial hearings before an IHO or SRO, the New York state regulations provide:

> In the event the impartial hearing officer determines that the interests of the parent are opposed to or are inconsistent with those of the student, or that for any other reason the interests of the student would best be protected by appointment of a guardian ad litem, the impartial hearing officer shall appoint a *guardian ad litem* to protect the interests of such student, unless a surrogate parent shall have previously been assigned.

N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5.

The Plaintiff does not provide any legal authority for the proposition that the Due Process clause requires anything more than what is provided by this regulation.  To the contrary, numerous federal court have held that constitutional due process requirements are satisfied by the procedural safeguards provided by the IDEA and New York implementing regulations.  <u>See, e.g.</u>, <u>Schafer v. Hicksville Union Free Sch. Dist.</u>, No. 06-CV-2531 (JS), 2011 WL 1322903, at *17 (E.D.N.Y. Mar. 31, 2011) ("[The] [p]laintiffs cannot satisfy the second prong of the analysis because they cannot show . . . that the post-deprivation remedy under IDEA was inadequate.  The IDEA hearing procedure satisfies procedural due process requirements."); <u>Does v. Mills</u>, No. 04 CIV. 2919 (RWS), 2005 WL 900620, at *9 (S.D.N.Y. Apr. 18, 2005) ("In addition, in the context of IDEA impartial hearings, numerous federal courts have held that constitutional due

process requirements are satisfied where, as here, the parties are provided the procedural safeguards found in the IDEA and its implementing regulations."); Wenger v. Canastota Cent. Sch. Dist., 979 F. Supp. 147, 153 (N.D.N.Y. 1997) aff'd, 181 F.3d 84 (2d Cir. 1999) and  aff'd sub nom. Wenger v. Canastota Cent. Sch. Dist., 208 F.3d 204 (2d Cir. 2000) ("In the present case, the [d]efendants provided the [p]laintiffs with all the process that was due to them by convening CSE meetings and holding impartial hearings at the [p]laintiffs' request.").

The Plaintiff also appears to argue that the IHO's decision not to appoint a *guardian ad litem* for MF violated his Due Process rights.  However, as described above, to hold a school district, such as Sachem, liable under § 1983, the Plaintiff must allege that the IHO's decision was the result of an official municipal policy or that a policymaking official "exhibit[ed] deliberate indifference to constitutional [or statutory] deprivations caused by subordinates, such that the official's inaction . . . may be properly thought of as a [municipal] policy or custom that is actionable under § 1983." Dzugas-Smith. 2012 WL 1655540 at *21 (quoting Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004)).

Here, the Plaintiff does not make any allegations that Sachem had a policy which encouraged IHOs to disregard the interests of students during Due Process hearings.  Moreover, she does not make any allegations from which a jury could plausibly conclude that Wolman's decision not to appoint a guardian ad litem for MF reflected a deliberate indifference to MF's constitutional rights.

Indeed, quite the opposite appears to be true: Wolman held hearings on August 11 and August 18, 2011, during which she heard testimony from the Plaintiff and legal arguments from the Plaintiff's counsel regarding whether a *guardian ad litem* should be appointed.  (Kwee Decl., Ex. C., Tr. 10:7–12.)  Ultimately, Wolman concluded that a *guardian ad litem* was not necessary

given that the primary focus of the Due Process hearings would be on the issue of the Plaintiff's standing to challenge the CSE's decision. (Kwee Decl., Ex. D, Tr. 119:20–120:14.) The fact that the Plaintiff disagreed with Wolman's decision does not, without more, suggest that Wolman acted with deliberate indifference, especially, where, as here, Wolman held hearings and appeared to carefully consider both parties' arguments as to whether a *guardian ad litem* was necessary.

Accordingly, the Court dismisses the Plaintiff's third cause of action based on § 1983. See, e.g., Dzugas-Smith, 2012 WL 1655540, at *21 (dismissing § 1983 against school district where "[the] [p]laintiff does not allege that any of the individual defendants acted pursuant to an official policy or longstanding practice or custom or challenge the UFSD's supervision or training of the individual defendants, nor does the record contain any evidence from which a reasonable jury could find that any policymaking official of the UFSD exhibited deliberate indifference to a known or obvious constitutional or statutory deprivation caused by a subordinate."); T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist., No. 11 CV 5133 (VB), 2012 WL 5992748, at *3 (S.D.N.Y. Nov. 27, 2012) ("[The] [p]laintiff has alleged a single incident involving actors below the policymaking level and the sheer possibility that other misconduct could have occurred. That is not enough [to sustain a claim for Monell liability]."); French v. New York State Dep't of Educ., No. 5:04-CV-434 (FJS), 2010 WL 3909163, at *11 (N.D.N.Y. Sept. 30, 2010) ("Since [the] [p]laintiff failed to allege that a pattern of unconstitutional conduct caused her [Free Appropriate Education] deprivation or that [the] [d]efendant . . . was deliberately indifferent by failing to intercede, train, or supervise its employees in order to protect her rights, the [c]ourt dismisses [the] [p]laintiff's section 1983 claims against [the] [d]efendant.")

**D. As to Plaintiff's Fourth Cause of Action**

In her fourth cause of action, the Plaintiff asserts that Sachem violated the integration mandate by "instituting and participating in a funding scheme that provides economic incentives to school districts to segregate students with disabilities from the communication." (Compl. at ¶ 97.) The Plaintiff does not make clear how Sachem participated in this "funding scheme" and even what the "funding scheme" entailed. The only allegations that she offers are vague and conclusory: (i) "New York State law does not require the school district in which a child resided at the time of the child's placement in a residential facility to reimburse the state for funds which are not related to special education previously distributed to the district on behalf of the child placed in a residential treatment facility"; and (ii) "[u]pon information and belief, the cost to [the] [D]efendant Sachem School District of providing additional supports to [MF] to enable him to remain in his regular school placement . . . would have been greater than the cost of placing [MF] in the Little Flower Treatment Center." (Compl. at ¶ 72.)

These allegations, even if true, do not plausibly give rise to an inference that Sachem was deliberately indifferent to the Plaintiff's disability or intentionally discriminated against him, let alone explain what the "funding scheme" is. See Luna v. N. Babylon Teacher's Org., No. 13-CV-6308 (ADS), 2014 WL 1378816 (E.D.N.Y. Apr. 7, 2014) (Spatt, J) ("However, '[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.'") (quoting Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006)). Moreover, the Plaintiff provides no legal authority for the proposition that participating in a funding scheme subjects a municipality to monetary liability under Olmstead and its progeny, which as described below, involved claims for injunctive relief

by mentally ill patients seeking to be released from an institution.  Accordingly, the Court dismisses the Plaintiff's fourth cause of action.

**F. As to the Plaintiff's Fifth Cause of Action**

 In her fifth cause of action, the Plaintiff alleges that the Defendant Suffolk County violated the integration mandate of the ADA and the IDEA by "paying for the confinement of [MF] in the [r]esidential [t]reatment [c]enter at Little Flower." (Compl. at ¶ 99.).

It is well-settled in this Circuit that plaintiffs cannot bring claims under the IDEA for monetary or punitive damages.  See, e.g., Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 486 (2d Cir. 2002) ("The purpose of the IDEA is to provide educational services, not compensation for personal injury, and a damages remedy—as contrasted with reimbursement of expenses—is fundamentally inconsistent with this goal. The availability of damages also would undercut the IDEA's carefully structured procedure for administrative remedies, a mechanism that encourages parents to seek relief at the time that a deficiency occurs and that allows the educational system to bring its expertise to bear in correcting its own mistakes. We therefore hold that monetary damages are not available under the IDEA."); Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ., 587 F.3d 176, 184 (3d Cir. 2009) ("[E]very circuit that has addressed this issue has held that compensatory and punitive damages are not available under the IDEA[.]"); Rekowicz v. Sachem Cent. Sch. Dist., No. 11-CV-1561 (JS), 2013 WL 4852305, at *4 (E.D.N.Y. Sept. 10, 2013) ("To the extent that the Amended Complaint alleges an IDEA claim against the District for monetary damages, such a claim should be dismissed as this is not an available remedy under the statute.").

Here, the Plaintiff seeks only compensatory and punitive damages.  (Compl. at ¶ 99.) Accordingly, her claim under the IDEA against Suffolk County for damages necessarily fails as a matter of law.

With respect to the ADA claim, as stated above, the Plaintiff does not make a plausible claim that participating in a funding scheme violates Title II of the ADA.

 Accordingly, the Court dismisses the Plaintiff's fifth cause of action against Suffolk County.

## G. As to the Plaintiff's Request to Amend Her Complaint

In its memoranda of law, the Plaintiff asks the Court to grant her leave to amend the complaint pursuant to Fed. R. Civ. P. 15(a)(2).  (The Pl.'s Mem. of Law in Opp'n to Suffolk County's Mot. at 9; the Pl.'s Mem. of Law in Opp'n to Sachem's Mot. at 11.)  Fed. R. Civ. P. 15 provides that a party may "amend it**s** pleading once as a matter of course within . . . 21 days after serving it."  Where the 21 day period has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."  Id.

The Plaintiff did not previously seek leave of the Court to amend her complaint. Moreover, "numerous courts have held that a 'bare request to amend a pleading' contained in a brief, which does not also attach the proposed amended pleading, is improper under Fed. R. Civ. P. 15."  Garnett-Bishop v. New York Cmty. Bancorp, Inc., No. 12-CV-2285 (ADS), 2014 WL 5822628, at *5 (E.D.N.Y. Nov. 6, 2014) (Spatt, J); see also Shah v. Helen Hayes Hosp., 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint."); Curry v. Campbell, No. 06-CV-2841 (DRH), 2012 WL 1004894, at *7 (E.D.N.Y. Mar. 23, 2012) ("To satisfy the requirement of particularly in a

motion to amend a pleading, the proposed amended pleading must accompany the motion so that both the [c]ourt and opposing parties can understand the exact changes sought.") (quoting AT & T Corp. v. Am. Cash Card Corp., 184 F.R.D. 515, 521 (S.D.N.Y. 1999)).  Accordingly, the Plaintiff's request to amend the complaint is denied.

### III. CONCLUSION

For the foregoing reasons, it is hereby ordered that the Defendants' motions to dismiss are granted and the Plaintiff's complaint is dismissed in its entirety.  The Clerk of the Court is directed to close this case.


**SO ORDERED.**
Dated: Central Islip, New York
February 5, 2015


_/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge